**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: : | |
| : | Chapter 11 |
| USG CORPORATION, : | |
| a Delaware corporation, <u>et</u> <u>al.</u>,<sup>1</sup> : | Jointly Administered |
| : | Case No. 01-2094 (JKF) |
| Debtors. : | |
| : | Re: Docket No. 10810/Agenda No. 1 |
| : | Hearing Date: 6/15/06 |
| : | |

**MODIFICATIONS TO FIRST AMENDED JOINT PLAN OF**
**REORGANIZATION OF USG CORPORATION AND ITS DEBTOR SUBSIDIARIES**

The above-captioned debtors (collectively, the "Debtors") hereby propose the following additions and modifications to the First Amended Joint Plan of Reorganization of USG Corporation and Its Debtor Subsidiaries, dated March 27, 2006 (as included in the solicitation packages, the "Plan"), pursuant to section 1127 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and Section XI.C of the Plan:

1. Section I.A.42 of the Plan is modified and restated as follows:[2]

**42.** **"Confirmation Order"** means the order**, including the findings of facts and conclusions of law,** of the Bankruptcy Court or the District Court, which, if entered **only** by the Bankruptcy Court, is affirmed by the District Court, that confirms the Plan pursuant to section 1129 of the Bankruptcy Code.

2. Section I.A.60 of the Plan is modified and restated as follows:

**60.** **"Distribution Record Date"** means the **first day of the** Confirmation ~~Date~~**Hearing**.

---

[1] The Debtors are the following 11 entities: USG Corporation, United States Gypsum Company, USG Interiors, Inc., USG Interiors International, Inc., L&W Supply Corporation, Beadex Manufacturing, LLC, B-R Pipeline Company, La Mirada Products Co., Inc., USG Industries, Inc., USG Pipeline Company and Stocking Specialists, Inc.

[2] All modified and restated Plan provisions are marked to reflect the modifications thereto.

3. Section I.A.97a is added to the Plan as follows:

<u>97a.</u> "PI Insurer Coverage Defenses" **means all defenses at law or in equity that any Asbestos Personal Injury Insurance Asset Entity may have under applicable law to provide insurance coverage to or for any Claim, Demand, or any other claim for coverage, payment or reimbursement of any kind.**

4. Section III.A.1.e.ii.A of the Plan is modified and restated as follows:

### A. Professional Compensation

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than ~~90 days after~~**the last business day of the month following the month in which** the Effective Date **occurs**; *provided*, *however*, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on the Reorganized Debtors and the requesting party ~~by the~~**no** later ~~of (1) 120 days after the Effective Date or (2) 30 days after the Filing of the applicable Final Fee Application~~**than 30 days after the deadline for Filing Final Fee Applications. The fee auditor in these Reorganization Cases (the "Fee Auditor") shall provide initial reports ("Initial Reports") to all Final Fee Applications no later than 30 days after the deadline for Filing Final Fee Applications, and any response to an Initial Report shall be provided within 30 days of the Filing of the applicable Initial Report. If a Professional or other Entity fails to respond timely to an Initial Report, the Fee Auditor is authorized to File a final report ("Final Report") immediately with respect to such Final Fee Application. Regardless of whether a Professional provides a response to an Initial Report, the Fee Auditor shall File all Final Reports regarding Final Fee Applications no later than 90 days after the deadline for Filing Final Fee Applications. Any replies to the Fee Auditor's Final Report shall be Filed within seven days of the Filing of the applicable Final Report. The December 18, 2006 omnibus hearing shall be the final hearing on all Final Fee Applications**. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

5. Section III.A.2.a of the Plan is modified and restated as follows:

### a. Priority Tax Claims

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full of the allowed amount of the Priority Tax Claim plus Postpetition Interest on the later of the Effective Date or ~~as soon as practicable~~**90 days** after the date when such Claim becomes an Allowed Claim.

6. Section III.B.7 of the Plan is modified to include the additional language shown below:

**7. Class 7 Claims (Asbestos Personal Injury Claims) are impaired**. On the Effective Date, all Asbestos Personal Injury Claims shall be channeled to the Asbestos Personal Injury Trust, which shall be funded pursuant to Section IV.G. All Asbestos Personal Injury Claims shall be determined and paid pursuant to the terms of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures**, subject to the right of any Asbestos Personal Injury Insurance Asset Entity to assert any PI Insurer Coverage Defense in response to a demand that such insurer handle, defend or pay any such Claim**. Pursuant to section 524(g) of the Bankruptcy Code, the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including:

7. Section IV.H.2 of the Plan is modified and restated as follows:

### 2. Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Section IV.H.3, shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim, Asbestos Personal Injury Claim or Interest or any Distribution to be made pursuant to the Plan on account of any Allowed Claim, Asbestos Personal Injury Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's **or the District Court's** approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's **or the District Court's** finding that such compromise or settlement is in the best interests of the Debtors, the Reorganized Debtors

and their respective property and Claim and Interest holders and is fair, equitable and reasonable.

    8.    Section IV.H.3.b.i of the Plan is modified and restated as follows:

    **b.**    **Release by the Debtors and Reorganized Debtors**

Without limiting any applicable provisions of or releases contained in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their affiliates, the Estates and their respective successors, assigns and any and all Entities who may purport to claim by, through, for or because of them, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to any Debtor, the Reorganization Cases or the Plan that such Entity has, had or may have against each of the present or**, to the extent they served during the Reorganization Cases,** former directors or officers of the Debtors acting in such capacity.

    9.    Section IV.H.3.c is modified and restated as follows:

    **c.**    **General Releases by Holders of Claims or Interests**

~~Without~~**To the maximum extent permitted by applicable law, without** limiting any other applicable provisions of, or releases contained in, the Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the obligations of the Debtors and the Reorganized Debtors under the Plan, the Note, the Contingent Payment Note, the New Investor Documents, cash and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim or Interest that votes in favor of the Plan shall be deemed to forever release, waive and discharge all Liabilities in any way relating to any Debtor, the Reorganization Cases or the Plan that such Entity has, had or may have against any Debtor, any Reorganized Debtor, the New Investor and each of their respective present or former directors, officers, employees, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity (which release shall be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code).

10. Section IV.I.3 of the Plan is modified and restated as follows:

### 3. Workers' Compensation Benefits

From and after the Effective Date, the Reorganized Debtors, ~~in their sole discretion, may~~ **shall** continue to pay ~~valid~~**in the ordinary course compensable** Claims arising before the Petition Date under the Debtors' workers' compensation programs.

11. Section IV.J.3.a of the Plan is modified and restated as follows:

### 3. Insurance Neutrality

a. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Plan ~~or the Confirmation Order (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing the insurers' legal, equitable or contractual rights, if any, in respect of any Claims~~**, any Exhibit to the Plan, the Confirmation Order or any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan, shall limit the right of any Asbestos Personal Injury Insurance Asset Entity to assert any PI Insurer Coverage Defense**. The rights of insurers shall be determined under the relevant insurance policies or insurance settlements, as applicable, and under applicable law.

12. Section IV.J.4 is added to the Plan as follows:

### 4. Collateral Effects of Confirmation

a. The Plan and the Confirmation Order shall be binding on the Debtors, the Reorganized Debtors, the Asbestos Personal Injury Trust and the beneficiaries of the Asbestos Personal Injury Trust. While the obligations, if any, of the Asbestos Personal Injury Trust to pay holders of Asbestos Personal Injury Claims shall be determined pursuant to the Plan and the Asbestos Personal Injury Trust Distribution Procedures, neither the Bankruptcy Court's or District Court's approval of the Plan and the Asbestos Personal Injury Trust Distribution Procedures, nor the Confirmation Order shall, with respect to any Asbestos Personal Injury Insurance Asset Entity (including on the basis of the decisions in *UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101 (7th Cir. 1991) or *Fuller-Austin Insulation Co. v. Fireman's Fund Inc. Co., et al.*, Case No. BC 116835, 2002 WL 31005090 (Cal. Superior Ct. Aug. 6, 2002)), constitute a trial or hearing on the merits, an adjudication or judgment, or be used as evidence to prove:

   i. that any of the Debtors, the Asbestos Personal Injury Trust or any Asbestos Personal Injury Insurance Asset Entity is liable for, or otherwise obligated to pay with respect to, any individual Asbestos Personal Injury Claim;

   ii. that the procedures established by the Plan, including the Asbestos Personal Injury Trust Distribution Procedures, for evaluating and paying

channeled Asbestos Personal Injury Claims are reasonable and/or consistent with any procedures that were used to evaluate or settle channeled Asbestos Personal Injury Claims against the Debtors before the Petition Date;

    iii.    that the settlement of, or the value assigned to, any individual channeled Asbestos Personal Injury Claim pursuant to the Asbestos Personal Injury Trust Distribution Procedures was reasonable and/or otherwise appropriate;

    iv.    that any of the Asbestos Personal Injury Insurance Asset Entities participated in and/or consented to the negotiation of the Plan or the Asbestos Personal Injury Trust Distribution Procedures;

    v.    that any of the Debtors or the Asbestos Personal Injury Trust Distribution Procedures have suffered an insured loss with respect to any channeled Asbestos Personal Injury Claim; or

    vi.    as to the liability, or amount thereof on an aggregate basis or for any individual claim, of the Debtors or any of the Asbestos Personal Injury Trust for Asbestos Personal Injury Claims.

    b.    Notwithstanding anything in Sections IV.J.3 or IV.J.4 to the contrary, nothing in Sections IV.J.3 or IV.J.4 shall affect or limit or be construed as affecting or limiting the protection afforded to any Settling Insurer by the Asbestos Permanent Channeling Injunction and/or the Asbestos Personal Injury Insurance Asset Entity Injunction.

    c.    Nothing in Sections IV.J.3 or IV.J.4 is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Asbestos Personal Injury Insurance Asset Entity with respect to any issue that is actually litigated by such Asbestos Personal Injury Insurance Asset Entity as part of its objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by such Asbestos Personal Injury Insurance Asset Entity in conjunction with or related to Confirmation of the Plan.

    d.    Nothing in the Plan, the Confirmation Order or any findings of fact and/or conclusions of law with respect to the Confirmation or consummation of the Plan shall limit the right, if any, of (i) any Asbestos Personal Injury Insurance Asset Entity to assert any PI Insurer Coverage Defense including by presenting evidence and/or argument with respect to any of the matters specified in clauses Section IV.J.4.a.i through Section IV.J.4.a.vi above or (ii) any other party in any such insurance coverage action to assert any appropriate position. Except as provided in Section IV.J.4.c above, none of the matters specified in Section IV.J.4.a.i through Section IV.J.4.a.vi above shall have any *res judicata* or collateral estoppel effect against any Asbestos Personal Injury Insurance Asset Entity.

13. Section IV.J.5 is added to the Plan as follows:

### 5. Contribution Claims

If a non-settling Asbestos Personal Injury Insurance Asset Entity asserts that it has rights of contribution, indemnity, reimbursement, subrogation or other similar claims (collectively, for purposes of this Section IV.J.5, "Contribution Claims") against a Settling Insurer, (a) such Contribution Claims may be asserted as a defense or counterclaim against the Asbestos Personal Injury Trust or the Reorganized Debtors (as applicable) in any action including such non-settling Asbestos Personal Injury Insurance Asset Entity, and the Asbestos Personal Injury Trust or the Reorganized Debtors (as applicable) may assert the legal or equitable rights, if any, of the Settling Insurer, and (b) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such non-settling Asbestos Personal Injury Insurance Asset Entity to the Asbestos Personal Injury Trust or the Reorganized Debtors (as applicable) shall be reduced by the amount of such Contribution Claims.

14. Section V.A. 4 of the Plan is modified to include the additional language shown below:

### 4. Approval of Assumptions and Assumption Procedures

The Confirmation Order shall constitute an order of the Bankruptcy Court **or the District Court** approving the assumptions described in Section V.A.1, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The appropriate procedures for assumption of an Executory Contract or Unexpired Lease are as follows:

15. Section V.C of the Plan is modified to include the additional language shown below:

### C. Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures

On the Effective Date, each Executory Contract and Unexpired Lease listed on Exhibit V.C shall be rejected pursuant to section 365 of the Bankruptcy Code. Each contract and lease listed on Exhibit V.C shall be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit V.C shall not constitute an admission by a Debtor or Reorganized Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court **or the District Court** approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The appropriate procedures for rejection of an Executory Contract or Unexpired Lease are as follows:

16. Section VIII.A.1 of the Plan is modified and restated as follows:

1. The Confirmation Order shall have been entered by the Bankruptcy Court ~~or the District Court (and, if the Confirmation Order is entered by the Bankruptcy Court, shall have been fully affirmed by~~ **and** the District Court~~)~~, shall be acceptable in form and substance to the Debtors and shall be reasonably satisfactory to the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative.

17. Section VIII.B.2 of the Plan is modified and restated as follows:

2. The Confirmation Order has been entered by the Bankruptcy Court ~~or the District Court (and, if the Confirmation Order is entered by the Bankruptcy Court, has been fully affirmed by~~ **and** the District Court~~)~~ and shall have become a Final Order.

18. Section VIII.D of the Plan is modified and restated as follows:

**D.    Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VIII.C, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court **or the District Court**; *provided*, *however*, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court **or the District Court** enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this Section VIII.D, (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

19. Section XI.B of the Plan is modified and restated as follows:

**B.    Limitation of Liability**

1. ~~The~~**To the maximum extent permitted by applicable law, the** Debtors, the Reorganized Debtors, the Credit Facilities Agent, the Creditors' Committee, the Asbestos Personal Injury Futures Representative, the Asbestos Personal Injury Committee, **the Asbestos Property Damage Committee,** the Equity Committee, the DIP Lender, the Indenture Trustees, the New Investor and their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Reorganization Cases or the consideration, formulation,

preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement or any transaction proposed in connection with the Reorganization Cases or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection therewith; *provided*, *however*, that the foregoing provisions of this Section XI.B.1 shall have no effect on:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

      2. ~~Notwithstanding~~**To the maximum extent permitted by applicable law, notwithstanding** any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtors, the Reorganized Debtors, the Credit Facilities Agent, the Creditors' Committee, the Asbestos Personal Injury Futures Representative, the Asbestos Personal Injury Committee, **the Asbestos Property Damage Committee,** the Equity Committee, the DIP Lender, the Indenture Trustees, the New Investor or their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, for any act or omission in connection with, relating to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for:  (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

Dated: June 8, 2006                               Respectfully submitted,

                                                  USG CORPORATION (for itself and on behalf of the
                                                  USG Subsidiary Debtors)


                                                  By:    /s/  Stanley L. Ferguson
                                                       STANLEY L. FERGUSON
                                                       EXECUTIVE VICE PRESIDENT AND GENERAL COUNSEL

COUNSEL:

DANIEL J. DEFRANCESCHI (DE 2732)
PAUL N. HEATH (DE 3704)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
Telephone: (302) 651-7700

        - and -

DAVID G. HEIMAN (OH 0038271)
GUS KALLERGIS (OH 0071557)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939

BRAD B. ERENS (IL 6206864)
MARK A. CODY (IL 6236871)
DANIEL B. PRIETO (IL 6272888)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939

ATTORNEYS FOR DEBTORS