3.      If the Debtors or Reorganized Debtors, as applicable, File an objection to the Postpetition Interest Rate Determination and no stipulation or agreement is reached with respect to the appropriate rate of Postpetition Interest for such Claim, the Debtors or Reorganized Debtors, as applicable, may ask the Bankruptcy Court to schedule a hearing on the particular Postpetition Interest Rate Determination Notice and the related objection at an appropriate time.

4.      The Debtors or Reorganized Debtors, as applicable, and the holder of the Claim that Filed the Postpetition Interest Rate Determination Notice at any time may enter into a stipulation or agreement as to the appropriate rate of Postpetition Interest with respect to such Claim, without further action of the Bankruptcy Court.

## ARTICLE V.

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**A.      Executory Contracts and Unexpired Leases to Be Assumed**

**1.      Assumption Generally**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Reorganized Debtor shall assume each of its respective Executory Contracts and Unexpired Leases other than those listed on Exhibit V.C; *provided, however,* that the Debtors reserve the right, at any time prior to the Effective Date, to amend Exhibit V.C to:  (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its assumption pursuant hereto; or (b) add any Executory Contract or Unexpired Lease to Exhibit V.C, thus providing for its rejection pursuant to this Section V.A.1.  The Debtors shall provide notice of any amendments to Exhibit V.C to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Reorganization Cases.  Nothing herein shall constitute an admission by a Debtor or Reorganized Debtor that any contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder.

**2.      Assumptions of Executory Contracts and Unexpired Leases**

Each Executory Contract or Unexpired Lease assumed under Section V.A.1 shall include any modifications, amendments, supplements or restatements to such contract or lease.

**3.      Assignments Related to the Restructuring Transactions**

As of the effective time of an applicable Restructuring Transaction, any Executory Contract or Unexpired Lease to be held by any Debtor or another surviving, resulting or acquiring corporation in an applicable Restructuring Transaction, shall be deemed assigned to the applicable Entity, pursuant to section 365 of the Bankruptcy Code.

**4.      Approval of Assumptions and Assumption Procedures**

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in Section V.A.1, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  The appropriate procedures for assumption of an Executory Contract or Unexpired Lease are as follows:

a.      After the entry of the Confirmation Order, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed or assumed and assigned; (ii) the Cure Amount Claim, if any, that the applicable Debtor believes it would be obligated to pay in connection with such assumption; and (iii) the procedures

-31-

for such party to object to the assumption or assumption and assignment of the applicable contract or lease or the amount of the proposed Cure Amount Claim.

          b.       Any entity wishing to object to (i) the proposed assumption of an Executory Contract or Unexpired Lease under the Plan or (ii) the proposed amount of the related Cure Amount Claim must File and serve on counsel to the Debtors a written objection setting forth the basis for the objection within 20 days of service of the notice described in Section V.A.4.a.

          c.       If no objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease: (i) the proposed assumption of the Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court; and (ii) the Cure Amount Claim identified by the Debtors in the notice shall be fixed and shall be paid in accordance with the Plan on or after the Effective Date, without further action of the Bankruptcy Court, to the appropriate contract or lease party identified on the notice.

          d.       If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

          e.       If an objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection: (i) the Debtors or Reorganized Debtors may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time; or (ii) the Debtors or Reorganized Debtors, as applicable, may designate the Executory Contract or Unexpired Lease underlying such objection for rejection pursuant to Section V.C and amend Exhibit V.C accordingly.

**B.**      **Payments Related to the Assumption of Executory Contracts and Unexpired Leases**

          To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor or Reorganized Debtor assuming such contract or lease or the assignee of such Debtor or Reorganized Debtor, if any: (1) by payment of the Cure Amount Claim in cash on the Effective Date or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is a dispute regarding: (1) the amount of any Cure Amount Claim; (2) the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. For assumptions of Executory Contracts or Unexpired Leases between Debtors, the Reorganized Debtor assuming such contract may cure any monetary default (1) by treating such amount as either a direct or indirect contribution to capital or Distribution (as appropriate) or (2) through an intercompany account balance in lieu of payment in cash.

**C.**      **Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures**

          On the Effective Date, each Executory Contract and Unexpired Lease listed on Exhibit V.C shall be rejected pursuant to section 365 of the Bankruptcy Code. Each contract and lease listed on Exhibit V.C shall be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit V.C shall not constitute an admission by a Debtor or Reorganized Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that a Debtor or Reorganized Debtor has any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such

rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The appropriate procedures for rejection of an Executory Contract or Unexpired Lease are as follows:

       1.      After the entry of the Confirmation Order, the Debtors shall serve upon each party to an Executory Contract or Unexpired Lease being rejected pursuant to the Plan notice of such proposed rejection.

       2.      Any entity wishing to object to the proposed rejection of an Executory Contract or Unexpired Lease under the Plan must File and serve on counsel to the Debtors a written objection setting forth the basis for the objection within 20 days of service of the notice described in Section V.C.1.

       3.      If no objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the proposed rejection of the applicable Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court.

       4.      If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

       5.      If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection the Debtors or Reorganized Debtors, as applicable, may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Court to schedule a hearing on the particular objection and the related reply at an appropriate time.

**D.**      **Bar Date for Rejection Damages**

       Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective successors or their respective properties unless a proof of Claim is Filed and served on the Reorganized Debtors, pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, on the later to occur of (1) 60 days after the Effective Date or (2) 30 days after the date of entry of an Order rejecting such Executory Contract or Unexpired Lease.

**E.**      **Obligations to Indemnify Directors, Officers and Employees**

       The obligations of each Debtor or Reorganized Debtor to indemnify any person serving as one of its directors, officers or employees prior to or following the Petition Date by reason of such person's prior or future service in such a capacity or as a director, officer or employee of any Debtor or any other corporation, partnership or other legal Entity, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent documents, by statutory law or by written agreement, policies or procedures of or with such Debtor, shall be deemed and treated as executory contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

**F.**      **Contracts and Leases Entered Into After the Petition Date**

       Notwithstanding any other provisions of the Plan, contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor or Reorganized Debtor liable thereunder in accordance with the terms and conditions of such contracts and leases in the ordinary course of its business. Accordingly, such contracts and leases and other

obligations (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.    Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan (including with respect to Asbestos Personal Injury Claims), Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (1) 60 days after the Effective Date or (2) such later date when the applicable conditions of Section V.B (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Section VI.D.2.a (regarding undeliverable Distributions), Section VI.G.4 (regarding compliance with Tax requirements) or Section VI.H (regarding surrender of canceled instruments or securities) are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Section VI.G.3. Any Claim that is disallowed by order of the Bankruptcy Court (or the District Court) prior to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the holder of any such Claim shall not be entitled to any Distributions under the Plan.

**B.    Method of Distributions to Holders of Claims**

Reorganized USG or such Third Party Disbursing Agents as Reorganized USG may employ in its sole discretion shall make all Distributions of cash, the Note, the Contingent Payment Note and other instruments or documents required under the Plan. Each Disbursing Agent shall serve without bond, and any Disbursing Agent may employ or contract with other Entities to assist in or make the Distributions required by the Plan. The Debtors intend that the Indenture Trustees and the Credit Facilities Agent will serve as Third Party Disbursing Agents and will receive Distributions for the benefit of, and make Distributions to, holders of Allowed Industrial Revenue Bond Claims, Allowed Senior Note Claims and Credit Facilities Claims, as applicable.

**C.    Compensation and Reimbursement for Services Related to Distributions**

Each Third Party Disbursing Agent providing services related to Distributions pursuant to the Plan shall receive from Reorganized USG, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments shall be made on terms agreed to with Reorganized USG and shall not be deducted from Distributions to be made pursuant to the Plan to holders of Allowed Claims receiving Distributions from a Third Party Disbursing Agent.

**D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.    Delivery of Distributions**

Except for Asbestos Personal Injury Claims, Distributions to holders of Allowed Claims shall be made by a Disbursing Agent (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to a Disbursing Agent) after the date of Filing of any related proof of Claim; or (c) at the addresses reflected in the applicable Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

**2.** **Undeliverable Distributions Held by Disbursing Agents**

    **a.** **Holding and Investment of Undeliverable Distributions**

If any Distribution to a holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further Distributions shall be made to such holder unless and until the applicable Disbursing Agent is notified by written certification of such holder's then-current address. Undeliverable Distributions shall remain in the possession of the applicable Disbursing Agent pursuant to this Section VI.D.2.a until such time as a Distribution becomes deliverable. Undeliverable cash shall be held in segregated bank accounts in the name of the applicable Disbursing Agent for the benefit of the potential claimants of such funds. Any Disbursing Agent holding undeliverable cash shall invest such cash in a manner consistent with the Reorganized Debtors' investment and deposit guidelines.

    **b.** **After Distributions Become Deliverable**

On each Quarterly Distribution Date, the applicable Disbursing Agents shall make all Distributions that become deliverable to holders of Allowed Claims (other than Asbestos Personal Injury Claims) during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent.

    **c.** **Failure to Claim Undeliverable Distributions**

Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable Distribution to be made by a Disbursing Agent within one year after the later of (i) the Effective Date and (ii) the last date on which a Distribution was attempted to be made to such holder shall have its claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such claim against the Reorganized Debtors or their respective property. Unclaimed Distributions shall become property of Reorganized USG, free of any restrictions thereon, and any such Distributions held by a Third Party Disbursing Agent shall be returned to Reorganized USG. Nothing contained in the Plan shall require any Debtor, Reorganized Debtor or Disbursing Agent to attempt to locate any holder of an Allowed Claim.

**E.** **Distribution Record Date**

    1.    A Disbursing Agent shall have no obligation to recognize the transfer of, or the sale of any participation in, any Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

    2.    As of the close of business on the Distribution Record Date, the respective transfer or Claims registers for the Credit Facilities Claims, Senior Note Claims and Industrial Revenue Bond Claims, as maintained by the Debtors or the Credit Facilities Agent, Senior Note Indenture Trustee or Industrial Revenue Bond Indenture Trustees, as applicable, shall be closed and any transfer of any Claim or interest therein shall be prohibited. The applicable Disbursing Agent shall have no obligation to recognize the transfer or sale of any Credit Facilities Claim, Senior Note Claim or Industrial Revenue Bond Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those holders of Credit Facilities Claims, Senior Note Claims or Industrial Revenue Bond Claims who are holders of such Claims as of the close of business on the Distribution Record Date.

    3.    Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

CHI-1527997v1

**F.**     **Means of Cash Payments**

Except as otherwise specified herein, cash payments made pursuant to the Plan to holders of Claims shall be in U.S. currency by checks drawn on a domestic bank selected by Reorganized USG or, at the option of Reorganized USG, by wire transfer from a domestic bank; *provided, however*, that cash payments to foreign holders of Allowed Claims may be made, at the option of Reorganized USG, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**G.**     **Timing and Calculation of Amounts to Be Distributed**

**1.**     **Timing of Distributions Under the Plan**

Any Distribution to be made by any Debtor or Reorganized Debtor pursuant to the Plan shall be deemed to have been timely made if made within 60 days after the time therefore specified in the Plan. Except as otherwise provided in the Plan, no interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

**2.**     **Distribution to the Asbestos Personal Injury Trust**

The Distribution to the Asbestos Personal Injury Trust shall be made on the Effective Date.

**3.**     **Allowed Claims**

On the Effective Date, each holder of an Allowed Claim (other than an Asbestos Personal Injury Claim) shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class. On each Quarterly Distribution Date, Distributions also shall be made pursuant to Section VII.D to holders of Disputed Claims in any such Class that were allowed during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent. Such quarterly Distributions also shall be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

**4.**     **Compliance with Tax Requirements**

a.     In connection with the Plan and as described in greater detail in Sections XII.D and XII.E of the Disclosure Statement, to the extent applicable, each Disbursing Agent shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Each Disbursing Agent shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

b.     Without limiting the generality of the foregoing, in accordance with the Internal Revenue Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless the holder (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides at the applicable Disbursing Agent's request a completed IRS Form W-9 (or substitute therefore) on which the holder includes a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Among other things, to receive any Postpetition Interest, if requested by a Disbursing Agent, a holder of an Allowed Claim shall be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding. Non-U.S. holders may be required by the applicable Disbursing Agent to provide a completed IRS Form W-8 to establish an exemption from or a treaty-reduced rate of withholding on interest distributed pursuant to the Plan. No Distributions on account of Postpetition Interest shall be made to a holder of an Allowed Claim until such time as the holder of such Claim establishes exemption from withholding or provides the relevant IRS Form W-8 or W-9, as applicable.

-36-

      c.      Notwithstanding any other provision of the Plan, each Entity receiving a Distribution of cash, the Note or the Contingent Payment Note pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other Tax obligations.

**H.**     **Surrender of Canceled Instruments or Securities**

As a condition precedent to receiving any Distribution pursuant to the Plan on account of an Allowed Claim evidenced by the notes, instruments, securities or other documentation canceled pursuant to Section IV.K, the holder of such Claim must tender, as specified in this Section VI.H, the applicable notes (other than any notes that may have been issued under the Credit Facilities), instruments, securities or other documentation evidencing such Claim to the applicable Disbursing Agent, together with any letter of transmittal required by such Disbursing Agent. Pending such surrender, any Distributions pursuant to the Plan on account of any such Claim shall be treated as an undeliverable Distribution pursuant to Section VI.D.2.a.

**I.**     **Setoffs**

Except with respect to claims of a Debtor or Reorganized Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Reorganized Debtors or, as instructed by the applicable Reorganized Debtor, a Third Party Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before any Distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the applicable Debtor or Reorganized Debtor may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the applicable Debtor or Reorganized Debtor of any claims, rights and causes of action that the Debtor or Reorganized Debtor may possess against such a Claim holder.

**J.**     **Allocation of Payments**

Amounts paid to holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess being allocated to interest that has accrued on such Claims but remains unpaid.

**ARTICLE VII.**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**A.**     **Prosecution of Objections to Claims**

     **1.**     **Objections to Claims**

Objections to Claims (other than Asbestos Personal Injury Claims) must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections shall be served on the parties on the then-applicable service list in the Reorganization Cases. If an objection has not been Filed to a proof of Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or Schedules relates shall be treated as an Allowed Claim if such Claim has not been allowed earlier.

     **2.**     **Authority to Prosecute Objections**

After the Effective Date, the Reorganized Debtors shall have the authority to File (if applicable), settle, compromise, withdraw or litigate to judgment objections to all Claims (other than Asbestos Personal Injury Claims), including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court.

CHI-1527997v1

After the Effective Date, the Reorganized Debtors may settle, compromise or otherwise resolve any Disputed Claim or any objection or controversy relating to any Claim without approval of the Bankruptcy Court.

### 3. Liquidation and Resolution of Litigation Claims and Asbestos Property Damage Claims

Any unliquidated or disputed Litigation Claim or Asbestos Property Damage Claim that is a Timely Claim shall be liquidated, in accordance with applicable law, in: (a) the Bankruptcy Court (or the District Court) or (b)(i) the court in which it is pending on the Effective Date or (ii) if no action was pending on the Effective Date, any court of appropriate jurisdiction. This Section VII.A.3 is without prejudice to any party's ability to request liquidation of a Claim in any applicable forum. If a Claim is to be liquidated in a court other than the Bankruptcy Court (or the District Court), upon the entry of an order of the Bankruptcy Court (or the District Court) or the execution of a written agreement by the Reorganized Debtors and the particular claimant, the injunction provided under Section IX.B.1 shall be deemed modified solely to the extent necessary to allow the parties to liquidate the Litigation Claim or the Asbestos Property Damage Claim in the applicable court. Notwithstanding the foregoing, at all times prior to or after the Effective Date, the Bankruptcy Court shall retain jurisdiction relating to Litigation Claims and Asbestos Property Damage Claims, including the Debtors' right to have such Claims liquidated in the Bankruptcy Court (or the District Court) pursuant to section 157(b)(2)(B) of title 28 of the United States Code, as may be applicable. Any Litigation Claim or Asbestos Property Damage Claim liquidated pursuant to a judgment obtained in accordance with this Section VII.A.3 and applicable nonbankruptcy law that is no longer appealable or subject to review shall be deemed an Allowed Claim in Class 6 or Class 8, as applicable, against the applicable Debtor in such liquidated amount upon the agreement of the parties or order of the Bankruptcy Court. The holder of any Litigation Claim or Asbestos Property Damage Claim allowed in accordance with the procedures in this Section VII.A.3 shall be entitled to any interest on such Allowed Claim required by applicable law and awarded by a Final Order. In the event a Litigation Claim or Asbestos Property Damage Claim is resolved pursuant to a judgment or order that (a) is obtained in accordance with this Section VII.A.3, (b) is no longer appealable or subject to review and (c) provides for no recovery against the applicable Reorganized Debtor, such Litigation Claim or Asbestos Property Damage Claim shall be deemed expunged without the necessity for further Bankruptcy Court approval upon the applicable Reorganized Debtor's service of a copy of such judgment or order upon the holder of such Litigation Claim or Asbestos Property Damage Claim. Nothing contained in this Section VII.A.3 shall constitute or be deemed a waiver of any claim, right or cause of action that a Debtor or Reorganized Debtor may have against any person or entity in connection with or arising out of any Litigation Claim or Asbestos Property Damage Claim.

### 4. Authority to Amend Schedules

The Debtors or the Reorganized Debtors shall have the authority to amend the Schedules with respect to any Claim and to make Distributions based on such amended Schedules without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor or Reorganized Debtor shall provide the holder of such Claim with notice of such amendment and such holder shall have 20 days to File an objection to such amendment with the Bankruptcy Court. If no such objection is Filed, the Debtor or Reorganized Debtor may proceed with Distributions based on such amended Schedules without approval of the Bankruptcy Court.

### B. Treatment of Disputed Claims

Notwithstanding any other provisions of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

### C. Enforcement of Bar Date Order

In accordance with the Bar Date Order and section 502(b)(9) of the Bankruptcy Code, any Entity that failed to File a proof of Claim by the applicable Bar Date or was not otherwise permitted to File a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court is and shall be barred, estopped and enjoined from asserting any Claim against the Debtors (1) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent and liquidated; or (2) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity. All Claims Filed after

-38-

the applicable Bar Date and for which no Final Order has been entered by the Bankruptcy Court determining that such Claims were timely Filed shall be disallowed and expunged. Any Distribution on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent and liquidated.

**D.        Distributions on Account of Disputed Claims Once Allowed**

On each Quarterly Distribution Date, the applicable Disbursing Agent shall make all Distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, to the extent not distributed earlier at the discretion of the applicable Disbursing Agent. Such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

**E.        Indenture Trustees as Relevant Claim Holders**

Consistent with Bankruptcy Rule 3003(c), the Debtors or Reorganized Debtors, as applicable, shall recognize a Proof of Claim filed by the Senior Note Indenture Trustee with respect to any Senior Note Claim or the relevant Industrial Revenue Bond Indenture Trustee with respect to the applicable Industrial Revenue Bond Claim; *provided, however,* such recognition in no way waives any of the Debtors' or Reorganized Debtors' rights against or defenses to such Claim. Accordingly, any Claim, proof of which is filed by the registered or beneficial holder of a Claim, shall be disallowed as duplicative of the Claim of the pertinent Indenture Trustee, without further action by the Debtors or Reorganized Debtors and without further order from the Bankruptcy Court.

**ARTICLE VIII.**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**A.        Conditions to Confirmation**

The following shall be conditions to Confirmation unless such conditions shall have been duly waived pursuant to Section VIII.C:

1.        The Confirmation Order shall have been entered by the Bankruptcy Court or the District Court (and, if the Confirmation Order is entered by the Bankruptcy Court, shall have been fully affirmed by the District Court), shall be acceptable in form and substance to the Debtors and shall be reasonably satisfactory to the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative.

2.        The Plan and Confirmation Order, as entered, shall ratify and approve the New Investor Documents without any change or modification.

3.        All Exhibits to the Plan are in form and substance satisfactory to the Debtors and reasonably satisfactory to the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative.

4.        The Bankruptcy Court or the District Court makes the following findings, each of which shall be contained in the Confirmation Order and each of which, if the Confirmation Order is entered by the Bankruptcy Court, shall be fully affirmed by the District Court:

a.        The Asbestos Permanent Channeling Injunction is to be implemented in connection with the Plan and the Asbestos Personal Injury Trust.

b.        The Asbestos Personal Injury Trust, as of the Effective Date, shall assume the liabilities of each of the Protected Parties with respect to all Asbestos Personal Injury Claims, and, upon such assumption, no Protected Party shall have any liability for any Asbestos Personal Injury Claim.

-39-

c.      Each Debtor had been named as a defendant in a personal injury, wrongful death or property damage action seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

d.      The Asbestos Personal Injury Trust is to be funded in whole or in part by securities of one or more of the Reorganized Debtors and by the obligation of such Reorganized Debtor or Reorganized Debtors to make future payments, including dividends.

e.      The Asbestos Personal Injury Trust is to own, or by the exercise of rights granted under the Plan would be entitled to own if specified contingencies occur, a majority of the voting shares of each such Reorganized Debtor, the parent corporation of each such Reorganized Debtor or a subsidiary of each such Reorganized Debtor that is also a Reorganized Debtor.

f.      The Asbestos Personal Injury Trust shall use its assets or income to pay Asbestos Personal Injury Claims, including Demands.

g.      Each of the Debtors is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction.

h.      The actual amounts, numbers and timing of such future Demands cannot be determined.

i.      Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

j.      The terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and in the Disclosure Statement.

k.      The Plan establishes, in Class 7 (Asbestos Personal Injury Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos Personal Injury Trust.

l.      Class 7 (Asbestos Personal Injury Claims) has voted, by at least 75 percent of those voting, in favor of the Plan.

m.      Pursuant to court orders or otherwise, the Asbestos Personal Injury Trust shall operate through mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims or other comparable mechanisms, that provide reasonable assurance that the Asbestos Personal Injury Trust shall value and be in a financial position to pay, Asbestos Personal Injury Claims, including Demands, that involve similar Claims in substantially the same manner.

n.      Each Protected Party is identifiable from the terms of the Asbestos Permanent Channeling Injunction by name or as part of an identifiable group, and each Protected Party is or may be alleged to be directly or indirectly liable for the conduct of, Claims against or Demands on a Debtor to the extent that such alleged liability arises by reason of one or more of the following:

i.      such Entity's ownership of a financial interest in any Debtor, Reorganized Debtor, a Past Affiliate, a present Affiliate of any Debtor or Reorganized Debtor, or Predecessor in Interest;

ii.      such Entity's involvement in the management of any Debtor, any Reorganized Debtor or any Predecessor in Interest;

-40-

iii.       such Entity's service as an officer, director or employee of any Debtor, any Reorganized Debtor, any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, any Predecessor in Interest or any Entity that owns or at any time has owned a financial interest in any Debtor, any Reorganized Debtor, any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, or any Predecessor in Interest; or

iv.       such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of any Debtor, any Reorganized Debtor or any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, any Predecessor in Interest or any Entity that owns or at any time has owned a financial interest in any Debtor, any Reorganized Debtor, any Past Affiliate, any present Affiliate of any Debtor or Reorganized Debtor, or any Predecessor in Interest, including (A) involvement in providing financing (debt or equity) or advice to an Entity involved in such a transaction or (B) acquiring or selling a financial interest in any Entity as part of such transaction.

o.       The Asbestos Personal Injury Futures Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of all persons, whether known or unknown, that might subsequently assert, directly or indirectly against any Debtor, an Asbestos Personal Injury Claim that is a Demand that is addressed in the Asbestos Permanent Channeling Injunction and transferred to the Asbestos Personal Injury Trust, regardless of the nature or theory of such Demand.

p.       Identifying each Protected Party (by name or as part of identifiable group, as applicable) in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust, on behalf of any such Protected Party.

q.       The Plan and the Asbestos Personal Injury Trust (and related documents) comply with section 524(g) of the Bankruptcy Code.

r.       The Plan and its Exhibits are a fair, equitable and reasonable resolution of the liabilities of the Debtors for the Asbestos Personal Injury Claims.

s.       The Asbestos Personal Injury Futures Representative has adequately and completely fulfilled his duties, responsibilities and obligations as the representative for the persons set forth in finding Section VIII.A.4.o above in accordance with section 524(g) of the Bankruptcy Code.

t.       Adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan has been given to (i) all known creditors and holders of Interests, (ii) parties that requested notice in accordance with Bankruptcy Rule 2002 (including the Asbestos Personal Injury Committee, Asbestos Personal Injury Futures Representative, Asbestos Property Damage Committee, the Equity Committee and the Creditors' Committee), (iii) all parties to Unexpired Leases and Executory Contracts with the Debtors and (iv) all taxing authorities listed on the Debtors' Schedules or in the Debtors' Claims database, in each case, (A) in accordance with the solicitation procedures governing such service and (B) in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b).  Such transmittal and service were adequate and sufficient to bind, among other parties, any holder of an Asbestos Personal Injury Claim, and no other or further notice is or shall be required.

5.       The Bankruptcy Court and the District Court, as required, shall have entered the Asbestos Permanent Channeling Injunction (which may be included in the Confirmation Order), which shall contain terms satisfactory to the Debtors and reasonably satisfactory to the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative.

CHI-1527997v1

**B.      Conditions to the Effective Date**

The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions have been satisfied or duly waived pursuant to Section VIII.C:

1.      The Bankruptcy Court or the District Court shall have entered an order (contemplated to be part of the Confirmation Order) in form and substance satisfactory to the Debtors and reasonably satisfactory to the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative approving and authorizing the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to implement the Plan, including completion of the Restructuring Transactions and other transactions contemplated by the Plan and the implementation and consummation of contracts, instruments, releases and other agreements or documents created in connection with the Plan.

2.      The Confirmation Order has been entered by the Bankruptcy Court or the District Court (and, if the Confirmation Order is entered by the Bankruptcy Court, has been fully affirmed by the District Court) and shall have become a Final Order.

3.      The Confirmation Order and the Asbestos Permanent Channeling Injunction shall be in full force and effect.

4.      The Asbestos Personal Injury Trustees shall have been selected and shall have executed and delivered the Asbestos Personal Injury Trust Agreement.

5.      Each of the Exhibits, the Rights Offering Documents and any debt documents shall be fully executed and delivered to the Debtors, shall be in form and substance acceptable to the Debtors and reasonably satisfactory to the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative and shall be fully enforceable in accordance with their terms.

6.      The Registration Statement shall have become effective and no stop order suspending the effectiveness thereof shall have been issued or proceedings therefor been initiated or threatened in writing by the Securities and Exchange Commission and shall be in full force and effect.

7.      The Effective Date shall have occurred on or before August 1, 2006.

**C.      Waiver of Conditions to Confirmation or the Effective Date**

The conditions to Confirmation set forth in Section VIII.A and the conditions to the Effective Date set forth in Section VIII.B may be waived in whole or part in writing by the Debtors at any time without an order of the Bankruptcy Court or the District Court; *provided, however,* (1) the conditions contained in Sections VIII.A.1, VIII.A.3, VIII.A.5, VIII.B.1, VIII.B.5 and VIII.B.7 may only be waived with the consent of the Asbestos Personal Injury Committee and Asbestos Personal Injury Futures Representative, which shall not be unreasonably withheld; and (2) the conditions contained in Section VIII.A.2 may only be waived with the consent of the New Investor.

**D.      Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VIII.C, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; *provided, however,* that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this Section VIII.D, (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained in the Plan shall (a) constitute a waiver or release of

any claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

## ARTICLE IX.

## DISCHARGE, INJUNCTION
## AND SUBORDINATION RIGHTS

**A.      Discharge of Claims**

1.      Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, including any Asbestos Personal Injury Claims (other than Demands) and including any interest accrued on Claims from the Petition Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation shall, as of the Effective Date discharge the Debtors from all Claims or other Liabilities that arose on or before the Effective Date and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted the Plan.

2.      In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of a discharge of all Claims, including any Asbestos Personal Injury Claims (other than Demands) and other debts and Liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim.

**B.      Injunctions**

**1.      General Injunctions**

**a.      Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan shall be permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities:  (i) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors or their respective property, other than to enforce any right pursuant to the Plan to a Distribution; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors or their respective property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, the Reorganized Debtors or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.**

**b.      As of the Effective Date, all Entities that have held, currently hold or may hold any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following actions against any released Entity or its property on account of such released claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released**

-43-

Entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

      c.      By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section IX.B.

2.      Asbestos Permanent Channeling Injunction

Pursuant to section 524(g) of the Bankruptcy Code, the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos Personal Injury Claim, all of which shall be channeled to the Asbestos Personal Injury Trust for resolution as set forth in the Asbestos Personal Injury Trust Agreement and the related Asbestos Personal Injury Trust Distribution Procedures, including:

      a.      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;

      b.      enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

      c.      creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

      d.      setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

      e.      proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust, except in conformity and compliance therewith.

The Asbestos Personal Injury Trust shall protect, defend, indemnify and hold harmless, to the fullest extent permitted by applicable law, each Protected Party from and against any Asbestos Personal Injury Claim and any related damages.

3.      Asbestos Personal Injury Insurance Asset Entity Injunction

      a.      Purpose and Provisions

In order to protect the Asbestos Personal Injury Trust and to preserve its assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the Asbestos Personal Injury Insurance Entity Injunction as described in Section IX.B.3.b; *provided, however,* that, except as otherwise provided in the Confirmation Order, (i) the Asbestos Personal Injury Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the Asbestos Personal Injury Insurance Entity Injunction with respect to any Asbestos Personal Injury Insurance Asset upon express written notice to such Asbestos Personal Injury Insurance Asset Entity; and (ii) the Asbestos Personal Injury Insurance Asset Entity Injunction is not issued for the benefit of any Asbestos Personal Injury Insurance Asset

-44-

Entity, and no Asbestos Personal Injury Insurance Asset Entity is a third-party beneficiary of the Asbestos Personal Injury Insurance Entity Injunction.

      **b.**      **Terms**

      **Subject to the provisions of Section IX.B.3.a, all Entities (not including the Asbestos Personal Injury Trust or the Reorganized Debtors) that have held or asserted, that hold or assert or that may in the future hold or assert any Claim, Demand or cause of action (including any Asbestos Personal Injury Claim assumed by the Asbestos Personal Injury Trust) against any Asbestos Personal Injury Insurance Asset Entity based upon, relating to, arising out of or in any way connected with any Asbestos Personal Injury Claim or Asbestos Personal Injury Insurance Asset whenever and wherever arisen or asserted (including all Claims in the nature of or sounding in tort, or under contract, warranty or any other theory of law, equity or admiralty) shall be stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction or recovery with respect to any such Claim, Demand or cause of action, including:**

            i.      **commencing, conducting or continuing, in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including a judicial, arbitration, administrative or other proceeding) in any forum with respect to any such Claim, Demand, or cause of action against any Asbestos Personal Injury Insurance Asset Entity, or against the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand or cause of action;**

            ii.      **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Asbestos Personal Injury Insurance Asset Entity, or against the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand or cause of action;**

            iii.      **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Personal Injury Insurance Asset Entity, or the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand or cause of action; and**

            iv.      **setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any obligation of any Asbestos Personal Injury Insurance Asset Entity, or against the property of any Asbestos Personal Injury Insurance Asset Entity, with respect to any such Claim, Demand and or cause of action.**

      **c.**      **Reservations**

      Notwithstanding anything to the contrary above, this Asbestos Personal Injury Insurance Entity Injunction shall not enjoin:

            i.      the rights of Entities to the treatment accorded them under Articles II and III of this Plan, as applicable, including the rights of Entities with Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims against the Asbestos Personal Injury Trust, in accordance with the Asbestos Personal Injury Trust Distribution Procedures and the terms of this Plan;

            ii.      the rights of Entities to assert any Claim, debt, obligation or liability for payment of Asbestos Personal Injury Trust-related expenses against the Asbestos Personal Injury Trust;

            iii.      the rights of the Asbestos Personal Injury Trust and the Reorganized Debtors, as applicable, to prosecute any action based on or arising from Asbestos Personal Injury Insurance Asset;

-45-

iv.      the rights of the Asbestos Personal Injury Trust to assert any claim, debt, obligation or liability for payment against an Asbestos Personal Injury Insurance Asset Entity based on or arising from the Asbestos Personal Injury Insurance Asset; and

v.      the rights of Entities to assert any claim, debt, right, obligation or liability that (A) arises or relates to any insurance policy or any portion of any insurance policy that is not an Asbestos Personal Injury Insurance Asset and (B) is not subject to the Asbestos Permanent Channeling Injunction.

**C.      Subordination Rights**

The classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights, and nothing in the Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise.

**ARTICLE X.**

**RETENTION OF JURISDICTION**

**A.      Retention of Exclusive Jurisdiction by the Bankruptcy Court**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, but subject to Section X.B, the Bankruptcy Court shall retain such exclusive jurisdiction over the Reorganization Cases and any matter related to the Reorganization Cases after the Effective Date as is legally permissible, including exclusive jurisdiction to:

1.      Other than with respect to Asbestos Personal Injury Claims, allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or the resolution of any objections to the allowance, priority or classification of Claims or Interests;

2.      Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

3.      Resolve any matters, related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or Reorganized Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

4.      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

7.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or

-46-

document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

8.     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

9.     Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

10.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

11.    Determine such other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.    Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes; and

13.    Enter a final decree closing the Reorganization Cases.

To the extent that it is not legally permissible for the Bankruptcy Court to have exclusive jurisdiction over any of the foregoing matters, the Bankruptcy Court shall have nonexclusive jurisdiction over such matters to the extent legally permissible.

**B.     Exclusive Jurisdiction of the District Court**

Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and anything to the contrary in Section X.A, the District Court shall retain exclusive jurisdiction over matters relating to section 524(g) of the Bankruptcy Code and the Asbestos Permanent Channeling Injunction, including exclusive jurisdiction to determine matters that may be set forth in the Asbestos Permanent Channeling Injunction, or that may arise in connection with the Asbestos Permanent Channeling Injunction.

**C.     Jurisdiction Relating to Asbestos Personal Injury Claims**

Notwithstanding anything in this Article X to the contrary, the resolution of Asbestos Personal Injury Claims and the forum in which such resolution shall be determined shall be governed by and in accordance with the Asbestos Personal Injury Trust Distribution Procedures and the Asbestos Personal Injury Trust Agreement.

**ARTICLE XI.**

**MISCELLANEOUS PROVISIONS**

**A.     Dissolution of the Committee and Discharge of Asbestos Personal Injury Futures Representative**

On the Effective Date, each of the Creditors' Committee, Asbestos Personal Injury Committee, Asbestos Property Damage Committee and Equity Committee shall dissolve and the members of such committees shall be

-47-

released and discharged from all duties and obligations arising from or related to the Reorganization Cases. Similarly, on the Effective Date, the Asbestos Personal Injury Futures Representative shall be deemed released and discharged from all duties and obligations from or related to the Reorganization Cases; *provided, however*, that the Asbestos Personal Injury Futures Representative may continue to serve or have obligations under the Asbestos Personal Injury Trust Agreement and be paid solely from the Asbestos Personal Injury Trust. The Professionals retained by such committees and the members thereof or by the Asbestos Personal Injury Futures Representative shall not be entitled to assert any Fee Claim for any services rendered or expenses incurred after the Effective Date, except for services rendered and expenses incurred in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.e.ii.A and in connection with any appeal of the Confirmation Order.

**B.      Limitation of Liability**

**1.      The Debtors, the Reorganized Debtors, the Credit Facilities Agent, the Creditors' Committee, the Asbestos Personal Injury Futures Representative, the Asbestos Personal Injury Committee, the Equity Committee, the DIP Lender, the Indenture Trustees, the New Investor and their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement or any transaction proposed in connection with the Reorganization Cases or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection therewith; *provided, however*, that the foregoing provisions of this Section XI.B.1 shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**2.      Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtors, the Reorganized Debtors, the Credit Facilities Agent, the Creditors' Committee, the Asbestos Personal Injury Futures Representative, the Asbestos Personal Injury Committee, the Equity Committee, the DIP Lender, the Indenture Trustees, the New Investor or their respective directors, officers, employees, affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, for any act or omission in connection with, relating to or arising out of the Reorganization Cases or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**C.      Modification of the Plan and Exhibits**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend or modify the Plan and the Exhibits to the Plan at any time before its substantial consummation. In addition, any modification or amendment to the Plan or the Exhibits that affects the treatment of Asbestos Personal Injury Claims shall require the consent of the Asbestos Personal Injury Committee and the Asbestos Personal Injury Futures Representative, which shall not be unreasonably withheld.

CHI-1527997v1

**D.        Revocation of the Plan**

The Debtors reserve the right to revoke or withdraw the Plan as to any or all of the Debtors prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation as to any or all of the Debtors does not occur, then, with respect to such Debtors, the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (1) constitute a waiver or release of any claims by or against, or any Interests in, such Debtors or (2) prejudice in any manner the rights of any Debtors or any other party.

**E.        Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**F.        Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**G.        Service of Certain Plan Exhibits and Disclosure Statement Exhibits**

Certain Exhibits are not being Filed or served with copies of the Plan and the Disclosure Statement. The Debtors shall File such Exhibits no later than 10 days before the deadline to vote to accept or reject the Plan. Once Filed, the Debtors shall make available for review the relevant Exhibits on their web site at www.usg.com.

**H.        Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtors, the Reorganized Debtors, the Creditors' Committee, the Asbestos Personal Injury Futures Representative, the Asbestos Personal Injury Committee, the Asbestos Property Damage Committee, the Equity Committee or the U.S. Trustee must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

**1.        The Debtors and the Reorganized Debtors**

Daniel J. DeFranceschi
Paul N. Heath
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Fax: (302) 651-7701

and

David G. Heiman
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Fax: (216) 579-0212

and

-49-

Brad B. Erens
Michelle M. Harner
Mark A. Cody
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Fax:  (312) 782-8585

2.     **The Creditors' Committee**

Lewis Kruger
Kenneth Pasquale
Denise K. Wildes
STROOCK & STROOCK & LAVAN
180 Maiden Lane
New York, NY 10038-4982
Fax: (212) 806-6006

3.     **Asbestos Personal Injury Futures Representative**

Dean M. Trafelet
P.O. Box 518
9130 Wild Lane
Baileys Harbor, WI 54202
Fax:  (920) 839-9438

and

Andrew Kress
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Fax: (212) 836-8689

4.     **The Asbestos Personal Injury Committee**

Elihu Inselbuch
CAPLIN & DRYSDALE, CHTD.
375 Park Avenue
New York, NY 10022-4614
Fax: (212) 644-6755

and

Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHTD.
One Thomas Circle, N.W.
Washington, D.C. 20005-5803
Fax:  (202) 429-3301

CHI-1527997v1

5.       **The Asbestos Property Damage Committee**

       Scott L. Baena
       Jay M. Sakalo
       BILZIN SUMBERG BAENA
       PRICE & AXELROD, LLP
       2500 First Union Financial Center
       200 South Biscayne Boulevard, Suite 2500
       Miami, FL 33131-2336
       Fax:  (305) 374-7593

6.       **The Equity Committee**

       Martin J. Bienenstock
       Judy G.Z. Liu
       WEIL, GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, NY 10153
       Fax: (212) 310-8007

           and

       David A. Hickerson
       WEIL, GOTSHAL & MANGES LLP
       1300 Eye Street, N.W., Suite 900
       Washington, DC 20005
       Fax: (202) 857-0940

           and

       Ralph I. Miller
       WEIL, GOTSHAL & MANGES LLP
       200 Crescent Court, Suite 300
       Dallas, TX 75201
       Fax: (214) 746-7777

7.       **The U.S. Trustee**

       David Klauder
       Office of the United States Trustee
       844 King Street, Suite 2313, Lockbox 35
       Wilmington, Delaware 19801
       Fax:  (302) 573-6497

CHI-1527997v1

8.      **The New Investor**

Marc D. Hamburg
Berkshire Hathaway Inc.
1440 Kiewit Plaza
Omaha, NE  68131
Fax:  (402) 346-3375

and

Thomas B. Walper
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560
Fax:  (213) 683-5193

CHI-1527997v1

Dated: March 27, 2006

Respectfully submitted,

USG CORPORATION (for itself and on behalf of the USG Subsidiary Debtors)


By:    /s/  Stanley L. Ferguson
      STANLEY L. FERGUSON
      EXECUTIVE VICE PRESIDENT AND GENERAL COUNSEL

COUNSEL:

DANIEL J. DEFRANCESCHI (DE 2732)
PAUL N. HEATH (DE 3704)
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
Telephone: (302) 651-7700

    - and -

DAVID G. HEIMAN (OH 0038271)
GUS KALLERGIS (OH 0071557)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939

BRAD B. ERENS (IL 6206864)
MICHELLE M. HARNER (IL 6276282)
MARK A. CODY (IL 6236871)
DANIEL B. PRIETO (IL 6272888)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939

ATTORNEYS FOR DEBTORS

CHI-1527997v1